# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HABITAT EDUCATION CENTER, INC., et al,**
    **Plaintiffs,**
v.

**UNITED STATES FOREST SERVICE, et al.,**
    **Defendants.**

Case No. 07-C-0578

## DECISION AND ORDER

Plaintiffs filed the present action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, arguing that in approving a project (the "Twentymile" project) in the Chequamegon-Nicolet National Forest ("CNNF"), the Forest Service violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., and the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 –1687. On January 13, 2009, I granted defendants' motion for summary judgment, concluding that the Forest Service had fully complied with NEPA and NFMA. Plaintiffs appealed and now ask me to enjoin the Forest Service from moving forward with the Twentymile project pending the outcome of their appeal. For the reasons stated below, the request will be denied.

## I. BACKGROUND

As indicated, this litigation involves the Twentymile restoration project, a project designed to achieve a number of goals within the project area, including the provision of forest commodities and the improvement of forest health. My prior decision and order, as well as the Record of Decision ("ROD") and Environmental Impact Statement ("EIS") for the project, explains the project's goals in more detail. For purposes of the present motion, the pertinent facts are that the project involves fourteen separate timber sales, and that those timber sales

-1-

will generate up to $3.3 million in revenue for the government, are expected to create or maintain 680-713 jobs, and will, in the judgment of the Forest Service, improve the health of the forest by, among other things, allowing new, younger trees to grow and compliment the existing, older trees in the area. (See generally Strauss Aff., March 31, 2009.) Plaintiffs contend that the timber sales will, when combined with other sales in the forest, destroy key habitat for certain sensitive species – specifically, Northern Goshawk, Red-shouldered Hawk and American Pine Marten. Plaintiffs further contend that the EIS prepared for the project is inadequate and does not accurately analyze the project's impact on these species. I found that the EIS is adequate and that the project may therefore proceed.

Plaintiffs filed the present motion after learning that the Forest Service is moving forward with one of the fourteen timber sales within the scope of the Twentymile project – the "Duck Lake" sale.[1] The Forest Service accepted bids for this sale on March 31, 2009, and the high bid came in at $99,731.05. The Forest Service has not yet awarded the contract to the high bidder, but it contemplates doing so in the next few weeks, after completion of a financial-ability determination and the purchaser's agreeing to release the Forest Service from liability in the event that a court enjoins the sale. Most of the work relating to the sale will take place during winter months, but about 20% is expected to be completed this summer, after the ground thaws. The Forest Service has stated that ground-disturbing activity could begin as soon as mid-May. Plaintiffs seek to prevent the Forest Service from taking any steps in furtherance of the Duck Lake or any other sale within the scope of the Twentymile project pending the outcome of their appeal.

---

[1] The Forest Service anticipates completing two additional timber sales relating to the Twentymile project this year, with the remainder of the fourteen sales to occur in 2010 or 2011.

## II. DISCUSSION

Federal Rule of Civil Procedure Rule 62(c) provides that a district court may enter an injunction pending appeal following entry of a final judgment denying injunctive relief. In deciding whether to issue an injunction pending appeal, I must consider: (1) the likelihood of appellants prevailing on the merits of their appeal; (2) whether appellants will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure other parties interested in the proceeding; and (4) where the public interest lies. See Cavel Int'l, Inc. v. Madigan, 500 F.3d 544, 546-49 (7th Cir. 2007); Hinrichs v. Bosma, 440 F.3d 393, 396 (7th Cir. 2006); Indianapolis Colts v. Mayor & City Council of Baltimore, 733 F.2d 484, 486 (7th Cir. 1984); Adams v. Walker, 488 F.2d 1064, 1065 (7th Cir. 1973). If an appeal has no merit at all, the request for an injunction should be denied. Cavel, 500 F.3d at 547. If, however, appellants have some likelihood of success on appeal, then the court applies a "sliding scale" approach, under which the court weighs the likelihood of success and extent of irreparable harm likely to be suffered by appellants against the harm likely to be suffered by appellees if an injunction is entered. Id.

I begin by assessing plaintiffs' likelihood of success. Although in this court plaintiffs alleged that the Forest Service had violated NEPA and NFMA for numerous different reasons, they state that on appeal they intend to pursue only two issues. The first is whether the Forest Service arbitrarily excluded the Nicolet side of the CNNF from the geographic area in which it measured the cumulative effects of the Twentymile project. I originally rejected this argument (Decision & Order at II.A.3.a), and I now conclude that plaintiffs have no likelihood of succeeding on it. As I previously explained, the Forest Service gave a reasoned explanation for its decision to limit its cumulative effects analysis to the Chequamegon side of the forest. Specifically, the Forest Service concluded that the degree of interaction

between species on the Chequamegon and Nicolet sides was so slight that including the Nicolet in the analysis of a project to be conducted on the Chequamegon would be meaningless. Plaintiffs continue to believe that the Forest Service must always define the relevant geographic area as the entire national forest, even if, as in the case of the CNNF, the forest consists of two noncontiguous landbases on opposite sides of the state. However, simply because the Forest Service administers the two landbases as a single national forest does not mean that a project conducted on one landbase will have meaningful environmental impacts on the other. And as I previously found, the record indicates that projects occurring on the Nicolet landbase would be no more relevant to the Twentymile analysis of impacts to goshawk, red-shouldered hawk, and pine marten than projects occurring in other parts of the world in which these species can be found. The Forest Service must draw a line somewhere, and in the present case its choice of boundary was undoubtedly reasonable.

Plaintiffs second claim is that the Forest Service violated NEPA by failing to treat the so-called "Twin Ghost" project as a "reasonably foreseeable" project and thus include it in the Twentymile cumulative effects analysis. I rejected this argument on the ground that plaintiffs had failed to produce any evidence from which I could reasonably conclude that the Forest Service was in a position to anticipate the potential environmental impacts of the Twin Ghost project when it decided to implement the Twentymile project. (Decision & Order at II.A.3.b.(ii)(a).) I found that the record indicated that Twin Ghost was so inchoate that no meaningful discussion of the project was possible.[2] Plaintiffs do not point to anything in the

---

[2] I also noted, however, that if Twin Ghost proceeded to a point at which its environmental impacts could be meaningfully predicted, and the Forest Service determined that such impacts would seriously change the environmental landscape presented in the Twentymile EIS, then the Forest Service would need to supplement the Twentymile EIS to account for Twin Ghost. However, plaintiffs have not indicated that they plan to argue on appeal that the Forest Service now knows (or should know) that Twin Ghost seriously

-4-

record to support their argument that the Forest Service was in a position to meaningfully predict the environmental impacts of Twin Ghost at the time it finalized the Twentymile EIS and decided to implement that project. Rather, their argument seems to be based entirely on their speculation that because the Forest Service gave the Twin Ghost project a name and took some preliminary steps towards its development, the Forest Service must have been in a position to predict its likely effects. However, I have no reason to think that this speculation will lead to success on appeal, and I therefore conclude that plaintiffs have no likelihood of succeeding on this claim.

Because I conclude that plaintiffs have no likelihood of success on appeal, they are not entitled to an injunction even if the balance of harms weighs in their favor. However, I find that even if plaintiffs had some likelihood of success on appeal, the balance of harms would favor defendants. Although a court cannot restore trees once they have been cut, and thus although plaintiffs are likely to experience some irreparable harm if the Duck Lake or other sales go forward, nothing in the record indicates that any of the imminent sales will inflict significant damage on species habitat. Plaintiffs' concern throughout this case has not been that the Twentymile project will directly harm sensitive species, but that the Twentymile project, when combined with the numerous other timber sales proposed by the Forest Service, will have a greater cumulative impact on such species than the Forest Service has disclosed. As plaintiffs have repeatedly stated, they contend that the Forest Service has proposed and approved "too much logging, too fast, in too many of the wrong places." (Tr. of Oral Arg. at 17.) Based on the preset record, however, it appears that very little of this logging will take place before plaintiffs' appeal is over. The Duck Lake sale is only one of

---

changes the environmental landscape such that supplementation is necessary. See Wisconsin v. Weinberger, 745 F.2d 412, 418 (7th Cir. 1984).

fourteen timber sales involved in the Twentymile project, and only 20% of that sale is likely to occur before next winter. Further, the Twentymile project is itself only one of many projects about which plaintiffs are concerned. Plaintiffs have submitted no evidence indicating that the amount of logging and other activity that is likely to occur before conclusion of the appellate process is likely to have a significant impact on sensitive species. Thus, although if logging commences plaintiffs will experience some irreparable harm, I have no reason to think that the amount of such harm will be significant.[3]

On the other side of the scale, the Forest Service has shown that an injunction would substantially harm it and the public interest. If the project is enjoined pending appeal, it is likely that no work could be completed this season. This delay would have an impact on the Forest Service's revenues and would delay a project thought to enhance forest health. In addition, it could cost jobs. The Forest Service estimates that the Twentymile project as a whole will create or maintain between 680 and 713 jobs. (Strauss Aff. ¶ 8.) Obviously, the Duck Lake sale will not on its own create or maintain this many jobs, but even the fewer jobs that it will create or maintain are more valuable to society now, during what some have called a depression, than they will be a year from now. Cf. http://www.bls.gov/data (Click "unemployment" then run local area search for Bayfield and Ashland Counties, Wisconsin) (last viewed April 10, 2009) (reporting February 2009 unemployment rates of 11.3% and

---

[3] Plaintiffs also argue that, aside from any environmental harm, they will also suffer irreparable harm from the Forest Service's mere act of awarding timber contracts to purchasers. Plaintiffs believe that awarding a contract to a purchaser will set in motion a "bureaucratic steamroller" that will result in environmental harm even if a court eventually enjoins the project. However, the Forest Service will include in its contracts with purchasers a clause allowing the Forest Service to terminate the contract in the event that a court issues an injunction against the Twentymile project. (Strauss Aff. ¶ 5.) This is sufficient to eliminate any threat of irreparable harm from the mere act of awarding contracts. Although plaintiffs are also concerned that awarding contracts will cause purchasers to seek to meddle in this litigation, such concern does not relate to the question of irreparable harm.

10.5% in counties in which Twentymile logging will occur). To be sure, the overall economic impact of these few jobs will be slight, but as I have said, the likely impact of the imminent sales on sensitive species will also be slight. Combined with plaintiffs' minimal (if any) chance of success on the merits, this results in the balance of harms tipping in defendants' favor. Therefore, plaintiffs' motion for an injunction pending appeal is **DENIED**.

Dated at Milwaukee, Wisconsin, this 11 day of April, 2009.

/s_____
LYNN ADELMAN
District Court Judge